DOUGLAS MOTORS CORPORATION, APPELLANT, v. DANIEL BAUM, JR., ET AL., APPELLEES.

Filed September 22, 1923. No. 22358.

Corporations: ACCOUNTING. Evidence examined, and *held* sufficient to sustain the findings and judgment of the trial court.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Affirmed.*

*Brome & Ramsey, J. P. Uvick* and *H. C. Brome,* for appellant.

*Gaines, Van Orsdel & Gaines, contra.*

Heard before MORRISSEY, C. J., ROSE, DEAN and DAY, JJ., BLACKLEDGE and COLBY, District Judges.

DAY, J.

This is an action in the nature of an accounting brought by the Douglas Motors Corporation against Daniel Baum, Jr., and the City Safety Deposit Company, to recover the value of 500 shares of stock in the plaintiff corporation. The action is based upon the theory that the shares of stock were issued to the City Safety Deposit Company without any consideration being paid therefor, and that the latter defendant had sold and transferred to innocent purchasers the said shares of stock so that the same could not be canceled. The plaintiff seeks to hold the defendant Baum liable upon the theory that, as president of the plaintiff corporation, and as a

member of the board of directors, he participated in the wrongful issuance of the shares of stock to the City Safety Deposit Company. The defendants denied that there was any fraud in the issuance of the shares of stock, and alleged that the plaintiff received a valid and legal consideration therefor. The trial resulted in a judgment in favor of the defendants. Plaintiff appeals.

The record shows that a corporation known as the Drummond Motor Company was organized in 1910 for the purpose of manufacturing and selling motor vehicles. The stock in this corporation was held largely by Frank W. Bacon and Walter J. Griffith. Bacon, who was a mechanical engineer of considerable genius and experience, had designed a type of motor car, known as the "Drummond," which the company proposed to manufacture and place on the market. The Drummond Motor Company did not have the necessary means to purchase materials in large quantities for the manufacture of this car, and accordingly applied to Daniel Baum, Jr., and Dan W. Gaines for a loan with which to purchase materials. After considerable negotiations, an agreement was entered into whereby Dan W. Gaines, Albert L. Schartz, David Baum, and Daniel Baum, Jr., under the name of the Drummond Sales Company, agreed to advance $15,000 to the Drummond Motor Company to purchase materials for use in the manufacture of the Drummond cars. The Drummond Sales Company advanced the $15,000, and later increased the amount, so that in December, 1916, the advancements amounted to $44,000. To secure these advances thus made, a bill of sale was executed by the Drummond Motor Company on the materials purchased. The Drummond Motor Company also entered into a contract with the Drummond Sales Company to construct out of the materials purchased 100 cars and to sell the same to the Drummond Sales Company for $700 a piece. In December, 1916, a scheme was suggested by one of the interested parties

which contemplated the organization of a new corporation with a large capital, which would succeed to the business of the Drummond Motor Company, and assume its indebtedness. Accordingly Daniel Baum, Jr., Frank W. Bacon, and Richard O. Bunn, residents of Nebraska, and George F. Sayre of South Dakota, organized a corporation under the laws of South Dakota, known as the Douglas Motors Corporation, with an authorized capital of $1,000,000, divided into shares of $100 each. Sayre was employed to participate in the organization for the purpose of complying with the laws of South Dakota. By the terms of the articles of incorporation the four incorporators constituted the board of directors until such time as a board of directors should be elected by the stockholders at their annual meeting. Following the organization a meeting was held of the board of directors, excepting Sayre, and the following officers were elected: Daniel Baum, Jr., president, Frank W. Bacon, vice-president and general manager, and Richard O. Bunn, secretary and treasurer.

At the first meeting of the board of directors it authorized the purchase from the Drummond Motor Company of the automobiles in course of manufacture, all of the materials on hand, its leasehold, and good-will, including the right to manufacture and sell the Drummond car. Arrangements were made by which stock in the new company was issued to the Drummond Motor Company of the face value of $80,000 in payment therefor The new company also guaranteed the payment of the indebtedness of the Drummond Motor Company amounting to approximately $55,000. While the record is not entirely clear as to the manner in which the City Safety Deposit Company acquired the bill of sale which had been executed to the Drummond Sales Company, and also the contract for the sale of 100 cars, it is assumed that it did so. An arrangement was made between the Douglas Motors Corporation and the City Safety Deposit

Company, by which the deposit company released the Douglas Motors Corporation from the obligation of the contract upon which 74 cars had not been delivered, and also released the bill of sale on the materials, resigned as transfer agent, and other considerations not made clear, taking in payment therefor 500 shares of stock in the new corporation, which shares of stock form the basis of the present controversy. The testimony shows that the contract for the sale of cars which the City Safety Deposit Company surrendered was a valuable one, there being a profit of $300 a car on the number of cars actually delivered. The other rights surrendered had a substantial value. Considering the fact that the value of the shares of stock in the Douglas Motors Corporation at the time the arrangement was made was more or less speculative, depending upon the success of the enterprise, it occurs to us that the value of this stock was not so disproportionate to the consideration surrendered by the City Safety Deposit Company as to be subject to criticism. Considering the whole record, we are convinced that the transaction between the plaintiff and the City Safety Deposit Company was entered into in good faith by the parties, and that the plaintiff has not shown facts sufficient to warrant the court in setting the transaction aside upon the ground of inadequacy of consideration in the issuance of the stock. If, as we hold, the City Safety Deposit Company is not liable, it follows as a matter of course that no liability could attach to Baum upon the theory that he wrongfully participated in the issuance of the stock.

The judgment of the lower court is right, and it is, therefore,

AFFIRMED.